UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re: )
)
TIMOTHY E. CLIGGOTT, ) Case No. 17-12248-BFK
) Chapter 11
Debtor. )
_____ )
BILL LEMASTER )
DIANE L. LEMASTER )
        Movants, )
)
vs. )
)
TIMOTHY E. CLIGGOTT, )
)
Respondent.

**ORDER: (A) DISMISSING CHAPTER 11 CASE
WITH PREJUDICE; AND (B) GRANTING RELIEF
FROM THE AUTOMATIC STAY**

This matter came before the Court for an evidentiary hearing on August 8, 2017, on the Court's Order to Show Cause why this bankruptcy case should not be dismissed with prejudice, and on the Motion for Relief from the Automatic Stay filed by Bill LeMaster and Diane L. LeMaster (together, the "LeMasters"). Docket Nos. 20 (Order), 16 (Motion for Relief from the Automatic Stay). The Debtor, Timothy Cliggott, filed a Response. Docket No. 28. For the reasons stated below, the Court will dismiss this case with prejudice. The Court also will grant the LeMasters' Motion for Relief from the Automatic Stay.

**Findings of Fact**

The Court, having heard the evidence, makes the following findings of fact:

*A. The Debtor's Previous Bankruptcy Case.*

1

1. Timothy Cliggott, the Debtor in Possession in this case, filed a voluntary petition under Chapter 11 with this Court on August 24, 2015 (Case No. 15-12929-BFK; "the First Case").

2. Mr. Cliggott was granted three (3) Motions for Extensions of Time to file his Schedules and Statement of Affairs. *Id.,* Docket Nos. 15, 24, 29. He listed Mr. and Ms. LeMaster with a claim in the amount of $300,000.00, secured by 12849 LeMaster Drive, Nokesville, Virginia 20181, but he did not list 12951 LeMaster Drive, Nokesville, Virginia 20181 (together, "the Property"). *Id.*, Docket No. 37, Schedule D. He listed the Property as having a value of $1,500,000.00. *Id.*, Schedule A.[1]

3. Mr. Cliggott also listed in his Statement of Financial Affairs a lawsuit that he had initiated against the LeMasters, *Cliggott v. LeMaster*, CL 15000684-00, in the Circuit Court of Prince William County. *Id.*, Statement of Financial Affairs, ¶ 9.

4. On March 18, 2016, Bill and Diane LeMaster filed a Motion for Relief from the Automatic Stay with respect to the Property. *Id.,* Docket No. 46.

5. A few days later, on March 21st, the U.S. Trustee filed a Motion to Convert the case to Chapter 7. *Id.*, Docket No. 48.

6. On June 13, 2016, the day before the hearing on the U.S. Trustee's Motion, the Debtor filed nine (9) Monthly Operating Reports, for the period of August 24, 2015 through May 31, 2016. *Id.*, Docket Nos. 63-71.

---

[1] The Debtor noted that the "two addresses [(12849 and 12851) form a single parcel, and both use the same common address [(12849)]" in his response to the LeMasters' Motion for Relief from the Automatic Stay. Case No. 15-12929-BFK, Docket No. 51, ¶ 12.

7. The Court granted the U.S. Trustee's Motion on June 14, 2016, and ordered that the case be converted. *Id.,* Docket Nos. 72, 74, 76. Kevin McCarthy was appointed as the Chapter 7 Trustee. *Id.*, Docket No. 75.

8. On August 4, 2016, Mr. McCarthy filed a Motion for approval of a sale of the Property to the Debtor for the purchase price of $100,000.00. *Id.*, Docket No. 96. The Court granted the Motion, and the sale was consummated. *Id.,* Docket Nos. 111, 124.

9. The Court also granted the LeMasters' Motion for Relief from the Automatic Stay on August 23, 2016. *Id.*, Docket No. 114. The Debtor, therefore, had the benefit of the automatic stay for one year, from the petition date of August 24, 2015 through the Order Granting Relief from the Automatic Stay on August 23, 2016.

10. Mr. McCarthy also filed a Notice of Abandonment of certain litigation claims related to the Property. *Id.*, Docket No. 117. The LeMasters objected to the proposed abandonment. Docket No. 120. The Court overruled the LeMasters' Objections and approved the abandonment of the litigation claims on October 28, 2016. *Id.*, Docket No. 133. Thus, the Debtor was free to return to state court to litigate whatever claims he had relating to the LeMasters' Note, the Deed of Trust or the Property.

11. The Debtor received his discharge in Chapter 7 on August 15, 2017. *Id.*, Docket No. 155.

B. *The Property.*

12. The Debtor is the owner of two parcels of real property - 12849 LeMaster Drive, and 12951 LeMaster Drive, Nokesville, Virginia 20181 (together, "the Property"). One parcel contains an 18,000 square-foot home. The other parcel is a vacant lot. The Debtor purchased the Property from the LeMasters in July 2012.

3

13. There is a first Deed of Trust against the Property in the approximate amount of $1.2 million, in favor of J.P. Morgan Chase. This Deed of Trust requires payments in the amount of $5,200.00 per month. The Debtor testified that he is approximately fifteen (15) months in arrears on this mortgage, thereby indicating that he is approximately $78,000.00 behind in monthly payments.

14. The Property also is encumbered by a second Deed of Trust in favor of the LeMasters, in the original principal amount of $300,000.00. LeMasters' Exs. A (Note) and B (Deed of Trust). The LeMasters claim that the total amount of the debt is $989,810.00. LeMasters' Ex. C. The LeMasters' Payoff Statement, however, includes a substantial amount of late charges that the Debtor disputes (even Mr. LeMaster testified that these charges were probably "excessive"). *See* Note, LeMasters' Ex. A, ¶ 6 ("There shall be a five (5%) percent late charge for payment received after fifteen (15) days past the due date *and each fifteen (15) days thereafter*.") (Emphasis added). Without the late charges, the Debtor acknowledges that the LeMasters' indebtedness stands at approximately $500,000.00 in principal, interest and legal fees.

15. The Debtor has never made a payment on the LeMasters' Note, from the date of the Note's execution and delivery in July 2012. The Note matured by its terms on June 16, 2017. LeMasters' Ex. A, ¶ 1.

16. The Property accrues real estate taxes to Prince William County in the amount of $3,000.00 per month. These taxes are not being paid or escrowed for because the Debtor is not paying the monthly mortgage payments on the first Deed of Trust.

17. The Debtor testified that he believes that the Property has a value of between $2.1 million and $2.2 million, though in his Schedules in this case he listed the Property with a value of $1,835,200.00. Case No. 17-12248-BFK, Docket No. 34, p. 3.

  C. *The Litigation in Prince William County.*

18. The Debtor has initiated litigation against the LeMasters in the Circuit Court of Prince William County for alleged breaches of the purchase agreement when the Debtor purchased the home. The Debtor claims that he has certain offsets to the LeMasters' Note. For example, he claims that the bowling alley in the house was in need of substantial repairs when he purchased the home. He also claims that Prince William County has asserted that the house lacks a Certificate of Occupancy, though Mr. LeMaster views this issue as being the Debtor's fault (apparently, the Debtor is renting out space above the garage; he also has had work done to the home, possibly without the proper permits, according to Mr. LeMaster).

19. Without wading into the merits of the Debtor's claims, the Court notes that the Debtor has not prosecuted the litigation claims against the LeMasters with any diligence. In fact, the litigation appears to have languished for the past two and a half years, with no resolution or trial date in sight.

  D. *The Debtor's Claim Against His Mothers' Estate and His*
     *Entitlement to a Distribution as a Beneficiary.*

20. The Debtor's mother passed away on June 14, 2017. The Debtor claims that he is owed $288,000.00 on account of a personal services contract that he had with his mother, which amount is due and payable in full from his mother's estate.[2]

---

[2] It is not clear how far back the Debtor's claim for personal services goes. If any of this claim arose before the Debtor filed his Chapter 7 petition on August 24, 2015, the pre-petition portion of the claim would be an asset of the Debtor's Chapter 7 estate. *See In re Andrews*, 80 F.3d 906, 911 (4th Cir. 1996) (Debtor's right to payments under a non-competition agreement were "rooted in the debtor's pre-petition conduct," and hence were property of the estate). It does not appear that the Debtor listed a claim for personal services in his Schedules in the previous case,

21. The Debtor is also a beneficiary of his mother's estate. He claims that, between the assets in his mother's estate (approximately $500,000.00) and the assets in his father's estate (approximately $5,300,000.00), which will pour over into his mother's estate, he is entitled to a distribution as a beneficiary of at least $2,500,000.00.

22. The Debtor acknowledged in his testimony, however, that his siblings, one or more of whom also are beneficiaries, distrust him. They claim that he was secretive about his mother's financial affairs while his mother was alive. The Debtor admits that he was secretive about his mother's financial affairs, but asserts that this was at his mother's direction.

23. The Debtor sold a condominium during his mother's lifetime. The Debtor's siblings are likely to inquire as to the disposition of the proceeds of the sale, if not to initiate litigation over the proceeds.

*E. This Bankruptcy Case.*

24. The Debtor filed this Chapter 11 case on June 29, 2017, the day before a foreclosure scheduled by the LeMasters on their Deed of Trust. Mr. and Ms. LeMaster filed a Motion for Relief from the Automatic Stay in order to proceed with a foreclosure on the Property. Case No. 17-12248-BFK, Docket No. 16.

25. The Court issued an Order on July 21, 2017, granting the LeMasters' request for an expedited hearing on their Motion, and ordering the Debtor to show cause why this case should not be dismissed with prejudice. *Id.*, Docket No. 20.

26. The Court heard the evidence on the LeMasters' Motion and on the Order to Show Cause on August 8, 2017.

---

though he did list a "loan" to his mother in the amount of $330,000.00. Case No. 15-12929-BFK, Docket No. 37, p. 8. The Debtor listed this loan in the current case as "Property of the Chapter 7 estate, not exempted or abandoned." Case No. 17-12248-BFK, Docket No. 34, p. 8. There is, therefore, some potential for conflict between the Debtor's still-open Chapter 7 case and this Chapter 11 case.

6

27. On August 9, 2017, the Debtor filed his Schedules in this case. In Schedule I, he states that he is unemployed, and he lists his monthly gross wages as "$0.00." *Id.*, Docket No. 34, p. 27.

28. The Debtor further states that he has $9,603.00 in monthly expenses (this amount includes the $5,200.00 per month that is accruing on the JP Morgan Chase first Deed of Trust, but does not include any amount payable to the LeMasters). *Id.,* p. 30. Thus, the Debtor has a *negative* $9,603.00 in monthly net income. *Id.*

29. In his Application for Employment in this case, Debtor's counsel disclosed that he did not receive a cash retainer; rather, the Debtor transferred a shotgun to Debtor's counsel as his retainer. *Id.*, Docket No. 4, ¶ 11.

30. Debtor's counsel proffered to the Court during the hearing on August 8th that the Debtor probably would have to borrow from friends or family in order to pay the U.S. Trustee's minimum quarterly fees of $325.00 per month.[3]

## Conclusions of Law

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference of the U.S. District Court for this District entered August 15, 1984. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate), and (G) (proceedings to terminate, annul or modify the automatic stay).

**I.     This Case Was Filed in Bad Faith.**

Under Section 1112(b) of the Bankruptcy Code, Chapter 11 cases may be dismissed "for cause." 11 U.S.C. § 1112(b). Every bankruptcy case carries with it an obligation of good faith. *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365, 375 (2007) ("[T]he broad authority

---

[3] *See* U.S. DEP'T OF JUSTICE, *U.S. Trustee Quarterly Fee* (2012)
https://www.justice.gov/sites/default/files/ust/legacy/2012/05/22/ch11_quarterly_fees.pdf

granted to bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process' described in § 105(a) of the Code, is surely adequate to authorize an immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief and may provide a debtor with an opportunity to take action prejudicial to creditors.") (internal footnotes omitted).

The Fourth Circuit has held that, in order to dismiss a Chapter 11 case, there must be a showing of both: (a) subjective bad faith; and (b) objective futility. *Carolin Corp. v. Miller*, 886 F.2d 693, 700-02 (4th Cir. 1989); *see also Rollex Corp. v. Associated Materials, Inc. (In re Superior Siding & Window, Inc.),* 14 F.3d 240, 242 (4th Cir. 1994). The Fourth Circuit noted that "though separate inquiries into each are required, proof inevitably will overlap. Evidence of subjective bad faith in filing may tend to prove objective futility, and *vice versa*." *Carolin Corp.*, 886 F.2d at 701.

The Fourth Circuit also noted the possibility that "in a given case proof of the objective futility of a proposed reorganization might be so overwhelming that it would support a parallel finding of subjective bad faith despite the lack of any other evidence more directly probative of the petitioner's motive." *Id*. at n.3.

    A.  *Subjective Bad Faith.*

The inquiry on subjective bad faith "is designed to insure that the petitioner actually intends 'to use the provisions of Chapter 11 . . . to reorganize or rehabilitate an existing enterprise, or to preserve going concern values of a viable or existing business.'" *Carolin Corp.,* 886 F.2d at 702 (quoting *In re Victory Constr. Co*., 9 B.R. 549, 564 (Bankr. C.D. Cal. 1981) (*Victory I*)) (alteration in original). Its aim is to "determine whether the petitioner's real motivation is 'to abuse the reorganization process' and 'to cause hardship or to delay creditors by

8

resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.'" *Id.* (quoting *In re Thirtieth Place, Inc.,* 30 B.R. 503, 505 (B.A.P. 9th Cir. 1983)).

After a year of proceeding in Chapter 11 and Chapter 7, the Debtor purchased the Property. The LeMasters were granted relief from the automatic stay, and the Debtor secured the abandonment of the litigation claims against them. In the year since relief from stay was granted in August 2016, the Debtor has done nothing to advance the litigation claims against the LeMasters. He filed this Chapter 11 case on the eve of a scheduled foreclosure.

Further, the Debtor's prospects for a successful reorganization in this case are so speculative and unrealistic (as discussed in Part B, below), the Court finds that the Debtor filed this case in subjective bad faith. The Debtor was certainly aware of his own lack of financial resources and substantial defaults on the first Deed of Trust when he filed this case. This Chapter 11 case is without any realistic prospect for a successful conclusion. It represents nothing more than a strategy for delay.

   *B. Objective Futility.*

The objective futility inquiry is "designed to insure that there is embodied in the petition 'some relation to the statutory objective of resuscitating a financially troubled [debtor].'" *Carolin Corp.,* 886 F.2d at 701 (quoting *In re Coastal Cable TV, Inc.,* 709 F.2d 762, 765 (1st Cir. 1983) (alteration in original).

The Debtor has no income. He has a negative monthly net income of $9,603.00 (not including any debt service on the LeMasters' debt). He "paid" the retainer to his Chapter 11 counsel by the transfer of a shotgun. He is in substantial default on his first Deed of Trust. He cannot pay the accruing real estate taxes. The continuing accrual of the debt on the first Deed of

Trust and the accumulation of real estate taxes against the Property are diminishing whatever equity cushion may be available in the Property on a monthly basis. The LeMasters, therefore, are being harmed by any further delay.

The Debtor's suggestion that his mother's estate will promptly pay him his claimed $288,000.00 on account of the personal services contract, without any objection or interference from his siblings, is not realistic. Equally improbable is the idea that the Debtor could borrow the remainder of the funds from friends in order to repay the LeMasters' Note (the Debtor takes inconsistent positions with respect to the LeMasters' Note – on the one hand, he claims that he will pay it off with these borrowed funds; on the other hand, he claims that he wants to litigate with the LeMasters *ad infinitum* over their alleged breaches of the original purchase agreement). The Debtor did not produce any written loan commitments that would support the notion that he can borrow these funds from his friends.

The Court finds that this case is objectively futile. The Debtor has no realistic prospect of a successful reorganization in Chapter 11 given his current financial circumstances.

    *C. Conversion to Chapter 7 Is Not an Option.*

The Debtor has now received his discharge in Chapter 7. Case No. 15-12929-BFK, Docket No. 155. He is not eligible for a Chapter 7 discharge at this time. 11 U.S.C. § 727(a)(8) (debtor is not entitled to a discharge in Chapter 7 where he or she has received a discharge in a case commenced within the past 8 years). The Court, therefore, cannot convert the case to Chapter 7.

Further, given that this is the Debtor's second bankruptcy filing in two years, and that the Debtor had the benefit of the automatic stay in his previous case for one year, the Court will dismiss this case with prejudice to a re-filing under any Chapter for one year. The Court will not

dismiss this case without prejudice only to see a third bankruptcy filing by the Debtor the day before the next scheduled foreclosure on the Property.

### II.     The LeMasters are Entitled to Relief from the Automatic Stay.

Although the case will be dismissed, the Court will address the LeMasters' Motion for Relief from the Automatic Stay for the sake of completeness. Section 362(d)(1) provides for relief from the automatic stay for "cause," including the lack of adequate protection of an interest in property. 11 U.S.C. § 362(d)(1). The term "cause" is not defined, and is determined on a case-by-case basis. The Court finds that there is cause for relief from the automatic stay.

First, the Debtor had the benefit of the automatic stay for one year in his previous bankruptcy case. He purchased the Property out of his previous bankruptcy case from the Chapter 7 Trustee. He also sought, and procured, an abandonment of the litigation claims against the LeMasters, so that he would have standing to maintain the claims in state court. He has not, however, pursued the litigation claims with any diligence, thereby giving rise to the inference that the claims are being maintained primarily, if not exclusively, in a defensive effort to forestall a foreclosure of the Property.

Second, the Debtor has no income and no ability to service the LeMasters' debt. He is in default under the first Deed of Trust by approximately $78,000.00. The first Deed of Trust is accruing at the rate of $5,200.00 per month, and the real estate taxes are accruing at the rate of $3,000.00 per month, thereby diminishing any equity cushion in the Property on a monthly basis.

The Debtor suggests that: (a) he will be paid his $288,000.00 under the personal services contract promptly; and (b) he can borrow the rest from friends, in order to pay off the LeMasters' debt (not including the late charges). The Court, however, finds both propositions to be highly doubtful. The Debtor acknowledged that his siblings, one or more of whom are also beneficiaries

of his mother's estate, are distrustful of him. They are likely to dispute his claims against the estate. The LeMasters cannot be expected to sit back and wait for their debt to be paid while the Debtor engages in what might be protracted estate litigation with his siblings.

The Court finds that there is cause for relief from the automatic stay under Section 362(d)(1) of the Code.

## Conclusion

For the foregoing reasons, it is **ORDERED**:

1.	The above bankruptcy case is dismissed with prejudice to the re-filing of a case by the Debtor under any Chapter of the Bankruptcy Code for a period of <u>one year</u> from the date of the entry of this Order.

2.	The LeMasters are granted relief from the automatic stay with respect to the Property pursuant to 11 U.S.C. § 362(d)(1).

3.	The Clerk will mail copies of this Order, or will provide cm-ecf notice of its entry, to the parties below.

Date: Aug 17 2017

/s/ Brian F. Kenney

Alexandria, Virginia

Brian F. Kenney
United States Bankruptcy Judge

Copies to:

Timothy E. Cliggott
12849 LeMaster Drive
Nokesville, VA 20181
	*Debtor in Possession*

Entered on Docket: Aug 18 2017

Daniel M. Press
6718 Whittier Ave., Suite 200
McLean, VA 22101
	*Counsel for Debtor in Possession*

Bill LeMaster
Diane L. LeMaster
12950 LeMaster Drive
Nokesville, VA 20181
    *Movants*

John T. Donelan
125 S, Royal Street
Alexandria, VA 22314
    *Counsel for Movants*

Bradley David Jones
115 South Union Street, Ste. 210
Alexandria, VA 22314
    *Chapter 11 Trustee*